<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

CHAMBERS OF
**SUSAN D. WIGENTON**
UNITED STATES DISTRICT
JUDGE

February 9, 2021

MARTIN LUTHER KING
COURTHOUSE
50 WALNUT ST.
NEWARK, NJ 07101
973-645-5903

Yongmoon Kim
Kim Law Firm, LLC
411 Hackensack Avenue, Suite 701
Hackensack, New Jersey 07601
*Counsel for Plaintiff*

Duran L. Keller
Keller Law
8 N. Third Street, Suite 403
Lafayette, Indiana 47901
*Counsel for Plaintiff*

Matthew B. Corwin
Ellen B. Silverman
Hinshaw & Culbertson, LLP
800 Third Avenue, 13th Floor
New York, New York 10022
*Counsel for Defendants*

<u>**LETTER OPINION FILED WITH THE CLERK OF THE COURT**</u>

**Re:     Georgina C. Sandoval et al. v. Midland Funding, LLC et al.**
**Civil Action No. 18-09396 (SDW) (LDW)**

Counsel:

Before this Court is Plaintiffs' appeal ("Appeal") of Magistrate Judge Leda Wettre's ("Judge Wettre") October 23, 2020 order denying Plaintiffs' Motion for Reconsideration ("Reconsideration Order").[1]  (*See* D.E. 92.)  That Reconsideration Order denied reconsideration of an August 19, 2020 discovery order[2] ("Discovery Order") (D.E. 76), which granted in part and

---

[1] The Reconsideration Order denied plaintiffs' Motion for Reconsideration but ordered supplemental briefing regarding Plaintiffs' request for an additional Rule 30(b)(6) deposition, stating: the parties should "file a joint letter regarding plaintiffs' specific need for a supplemental Rule 30(b)(6) deposition or limited supplemental interrogatories."  (D.E. 92.)

[2] The underlying Discovery Order stated that: "Defendants shall produce their amended response to Interrogatory No. 7 and the requested letter templates on or before September 11, 2020," "[t]he parties shall meet and confer regarding

denied in part certain discovery requests, (D.E. 72, 73).  This Court having considered the Parties' submissions and having reached its decision without oral argument pursuant to Federal Rule of Civil Procedure 78, and for the reasons discussed below, **AFFIRMS** the Discovery and Reconsideration Orders.

## DISCUSSION

### A.  Background

This case, brought pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, concerns statements made in a disclosure letter, which Plaintiffs allege inappropriately threatened or misled members of a putative class when Defendants used it to collect consumer debts.  (D.E. 18; D.E 100 at 1.)  This Court will begin by summarizing the convoluted history of discovery disputes that led to this Appeal.[3]

On May 12, 2020, Judge Wettre held a conference with the parties, where she noted that the case was in the "final stages" of a long-pending discovery period.  (D.E. 54 at 4:23-5:1; *id.* at 7:2-11.)  Defendants had already "offered" to compile additional information for Plaintiffs in an Excel spreadsheet (the "Spreadsheet"), including when Defendants reported putative class members' debt to credit reporting agencies.  (*Id.*)  Consequently, Judge Wettre asked the parties to outline any remaining outstanding discovery disputes.  (*Id.*)  At first, Plaintiffs' counsel argued that the Spreadsheet lacked essential information, including the date when credit agencies stopped monitoring the putative class.  (*See, e.g.*, *id.* at 9:11-10-3; *id.* at 11:15-22.)  It soon became clear, however, that Defendants had already agreed to produce this information, and that Plaintiffs were less concerned with the Spreadsheet than with obtaining a supplemental Rule 30(b)(6) deposition.  (*Id.* at 11:2-13 (Defendants' counsel noting she was "not really sure at this point" what Plaintiffs were disputing); *id.* at 11:15-12:10 (Plaintiffs stating a need to "confirm" the Spreadsheet through "a deposition"); *see also* D.E. 72 at 1.)

As a compromise, Judge Wettre proposed that Defendants provide a sampling of the underlying Spreadsheet data, as a way to confirm its accuracy.  (*Id.* at 13:6-20.)  Plaintiffs quickly agreed to this proposal, noting that a sampling of the underlying data, rather than a supplemental deposition, seemed to be a "solution" to the problem.  (*Id.* at 13:25-14:9 (Plaintiffs' counsel noting, "I think that's fair, Your Honor.  Frankly, you articulate it much better than me.").)  Plaintiffs added that, if Defendants agreed to "stipulate" to the Spreadsheet data, "[Plaintiffs] don't need another deposition."  (*Id.* at 16:7-15.)  As a result, Judge Wettre ordered the relevant Spreadsheet data to be produced, and ordered Plaintiffs to, within 30 days, request a "reasonable sample" of the underlying records for those accounts from Defendants.  (*See* D.E. 52; D.E. 54.)  Next, the parties turned to a dispute regarding Defendants' net worth.  (D.E. 96 at 16:23-25.)  Defendants

---

plaintiffs' request for production of a sample of account information," and "[a]ll other information sought by plaintiffs in their July 14, 2020 discovery dispute letter is DENIED."  (D.E. 76.)

[3] Plaintiffs failed to provide this Court with a clear factual history of the relevant discovery disputes.  (*See* D.E. 95.)  These underlying disputes, however, provide essential context for the Reconsideration Order.

were ordered to respond to Plaintiffs' pending net worth interrogatories and requests for production. (D.E. 54 at 21:19-24; *id.* at 23:23-25; D.E. 52, ¶¶ 2-3.)

Another conference was scheduled for July 21, 2020. (D.E. 71.) On July 14, 2020, Plaintiffs filed a seven-page letter, detailing additional discovery disputes ("Discovery Demands"). (D.E. 72.) The letter focused on newly discovered calculation errors—Defendants, upon attempting to comply with this Court's May 2020 order and beginning to populate the Spreadsheet, identified a coding error that had previously caused them to under-report the total number of individuals who received the allegedly misleading credit-reporting letter. (*Id.* at 1 (alleging that the class size has "skyrocketed"); D.E. 99 (noting that, "nearly two years into this litigation, defendants disclosed that the putative class encompasses 152,222 unique accounts/120,130 unique consumers, not 5,278 as previously reported").) Using this increase in putative class size as a basis for their renewed discovery demands, Plaintiffs' letter requested: (1) an expanded interrogatory response regarding the number of individuals in the alleged class,[4] (2) additional information regarding the "production of documents concerning defendants' net worth,"[5] (3) a supplemental Rule 30(b)(6) deposition,[6] and (4) letter templates identified in the class list, as well as a sample of the underlying account records, as the parties had failed to come to an agreement on reasonable sampling. (D.E. 72 at 1; D.E. 96 at 3:23-4:6.) On July 16, 2020, Defendants responded to Plaintiffs' letter, noting that they had been acting in good faith to comply with this Court's order when they discovered the coding issue. (D.E. 73 at 1.) Further, Defendants noted that they: (1) had provided the exact "net worth" information that Plaintiffs had requested (partial balance sheets, a written verified interrogatory response to identify Defendants' net worth, and unaudited "consolidated statements of financial conditions"), (2) remained willing to amend their interrogatory regarding "unique consumers who received a letter with the credit reporting disclosure at issue," but were not willing to adopt Plaintiffs' proposed language specifically defining the number of "class members," (3) opposed an additional deposition, and (4) remained willing to provide a limited set of letter templates. (D.E. 73 at 2-3.) The July 21, 2020 conference was rescheduled for August 18, 2020. (D.E. 74.)

At the August 18, 2020 conference, Judge Wettre considered the Discovery Demands. By this point, Defendants had already "agreed to amend their interrogatory response as to class size and to produce certain debt collection letter template[s] and sample records, resolving two of the [four] disputes raised in plaintiffs' July 14, 2020 letter." (D.E. 99; D.E. 76.) Accordingly, the

---

[4] Plaintiffs insinuated that they would only be satisfied with the specific response that there were "120,130 people [who] are members of the class," rather than the statement that there were "120,130 consumers" identified in the Spreadsheet. (D.E. 72 at 4.) Further, Plaintiffs seemed to take issue with various common, boilerplate objections in Defendants' responses, despite the fact Defendants had provided them with much of the requested information. (*Id.*)

[5] Here, Plaintiffs listed many discovery requests, which they claimed Defendants had insufficiently answered. (D.E. 72 at 4-5.) Plaintiffs again suggested they would only accept responses with "no" objections. (*See id.* at 3.)

[6] Plaintiffs' broad proposed topics included: Defendants' "net worth"; "the size of the proposed class and the method(s) of such calculation, including each and all ways in which the defendants' business records can be, or have been, utilized to calculate the size and scope of each class . . . including those who were already subject to credit reporting [] when the violative letter was sent," "drafting, creation, and sending of letters relating to [Defendants'] direct mail team," and "the template(s) and/or language contained in the letters exchanged in discovery." (D.E. 72 at 6.)

conference focused on the remaining two demands: (1) additional net worth information, and (2) a supplemental deposition. (D.E. 72.) In a Discovery Order, an amended interrogatory response was ordered, but plaintiffs' requests for "additional net worth information" and "a second Rule 30(b)(6) deposition [that] sought testimony on topics well beyond the newly disclosed increase in the size of the putative class" were denied. (D.E. 76.) She noted that the net worth information was unnecessary because Defendants had already "provid[ed] verified interrogatory responses as to net worth." (D.E. 99; D.E. 96 at 4:7-17.) Again, the parties were instructed to agree on "a reasonable sample of underlying [Spreadsheet] data." (D.E. 76.)

On September 2, 2020, Plaintiffs filed a Motion for Reconsideration ("Motion") of the Discovery Order.[7] (D.E. 77.) On September 11, 2020, the parties filed a joint letter in which they noted they were making "good progress" toward resolving any outstanding issues. (D.E. 79.) The parties were ordered to file a "status letter" advising whether the Motion had been resolved by October 16, 2020. (D.E. 85.) On October 16, 2020, Defendants filed a letter noting that despite making "every effort to compromise," Plaintiffs had "suddenly materially broadened their demand." (D.E. 86.) The same day, Plaintiffs sent a reply. (D.E. 87; D.E. 88.) Plaintiffs' letter repeated their previously articulated concerns regarding the Spreadsheet errors and renewed their request for an additional deposition. (D.E. 88.) On October 19, 2020, Defendants filed their opposition to Plaintiffs' Motion. (D.E. 89.)

On October 22, 2020, another conference was held to address the Motion. (D.E. 99 at 2.) Judge Wettre determined that "Plaintiffs have not raised any legitimate grounds for reconsideration, as they have not identified any change in the law, new evidence, or clear error" in the Discovery Order. (D.E. 89; *see* D.E. 99 at 2 (citing *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (Oct. 22, 2020).) Thus, the Motion was "nothing more than another request for discovery" that had previously been denied. (D.E 96 at 6:6-11.) Judge Wettre further noted that the parties had "been in fact discovery" for an "extraordinarily long period of time," and that plaintiffs had only "vaguely stated" their "need for the deposition." (*Id.* at 6:10-7:3.) In conclusion, Judge Wettre stated that there was "no legal basis for reconsidering" the Discovery Order, and therefore denied the Motion. (*Id.*) Nonetheless, Defendants were ordered to "produce underlying letter histories and credit reporting histories for 30 . . . accounts on the [Spreadsheet], to be picked by plaintiffs." (*Id.* at 15:23-16:1.)

Next, the conference turned to Plaintiffs' October letter, noting that Plaintiffs' requests for a supplemental deposition were lacking in specificity.[8] (*Id.* at 7:4-15.) However, she allowed the parties the opportunity to file a joint letter noting their positions as to the deposition with specificity. (*See, e.g.*, D.E. 96 at 7:4-21 (although "the increased class size may cause problems for plaintiffs' counsel and the defendants only recently produced a number of debt collection letter templates," it was impossible to tell, "what plaintiffs hope to achieve with a second . . . deposition").) If Plaintiffs convinced the Judge that they would be "prejudiced going forward in

---

[7] Plaintiffs' Motion also requested authentication of the Spreadsheet, but Judge Wettre noted that, as of October 15, 2020, Defendants' had provided the requested affidavits. (D.E. 96 at 5:5-12.)

[8] Further, Judge Wettre noted that Plaintiffs had previously told her that, if Defendants "stipulated to the authenticity of the [Spreadsheet], they wouldn't need a follow-up deposition." (D.E. 96 at 7:21-23.)

4

the case without" such a deposition, and the topics covered a "very finite area that is absolutely needed," she would consider granting the request.  (D.E. 96 at 11:1-7.)  In the alternative, she would consider granting additional interrogatories.  (*Id.*)  A Reconsideration Order was entered on October 23, 2020, which reflected the conference transcript.  (D.E. 92.)

On November 2, 2020, the parties filed a joint letter outlining their positions.  (*See* D.E. 94.)  Plaintiffs proposed twelve broad deposition topics.  (*See, e.g.*, *id.* at 3 ("The authenticity of documents identified in all of the disclosures, pleadings, and discovery responses"); *id.* at 7 ("The accuracy and explanations of defendants' responses to discovery requests.").)  Defendants opposed these topics.  (*See id.*)

On November 9, 2020, Plaintiffs filed this Appeal of the Reconsideration Order.  (D.E. 95-1.)  Plaintiffs argued that the Discovery and Reconsideration Orders were "erroneous and should be reversed" because they "unfairly prejudic[e] Plaintiffs' ability to prosecute this case [and] satisfy the requirements of Rule 23."  (*Id.* at 3.)  Plaintiffs also stated they had "sought a supplemental Rule 30(b)(6) deposition which were [*sic*] denied."  (*Id.* at 7.)  On November 20, 2020, Judge Wettre responded to the parties' joint letter.  (D.E. 99.)  There, she noted that although Plaintiffs' "12 topics [were largely] overly broad, duplicative, cumulative of topics covered during the first Rule 30(b)(6) deposition, or [were repetitive of topics] which the Court has already denied," she would nonetheless allow a two-hour supplemental Rule 30(b)(6) deposition as to Topics 7 and 8.  (*Id.* at 3-4.)

On December 7, 2020, Defendants opposed Plaintiffs' Appeal.  (D.E. 100.)  In part, Defendants argued that the Appeal was moot, as the supplemental deposition request had been granted.  (*Id.* at 3-4 ("Although the [] Appeal fails to actually articulate which portions or discovery items . . . are actually being appealed, [it] has a *singular* and repeated ask of the Court: to order Defendants 'to produce a witness to testify on their behalves for a supplemental deposition.'") (emphasis in original).)  On December 14, 2020, Plaintiffs replied, arguing that the supplemental deposition did not "permit Plaintiffs an adequate opportunity to examine Defendants."  (D.E. 103 at 3.)  Since the parties completed briefing this Appeal, Plaintiffs have raised additional discovery disputes.  (*See* D.E. 104.)

## B.  Standard of Review

Although the Federal Rules of Civil Procedure "do not expressly authorize motions for reconsideration, Local Civil Rule 7.1(i) provides for such review."  *Sch. Specialty, Inc. v. Ferrentino*, Civ. No. 14-4507, 2015 WL 4602995, at *2–3 (D.N.J. July 30, 2015).  A party moving for reconsideration must file its motion within fourteen (14) days "after the entry of the order or judgment on the original motion" and set "forth concisely the matter or controlling decisions which the party believes the . . . Judge has overlooked."  L. Civ. R. 7.1(i).  A motion for reconsideration is "an extremely limited procedural vehicle," *Ferrentino*, 2015 WL 4602995 at *2 (internal citations omitted), which is to be granted "sparingly."  *A.K. Stamping Co., Inc. v. Instrument Specialties Co., Inc.*, 106 F. Supp. 2d 627, 662 (D.N.J. 2000).  Motions to reconsider are only proper where the moving party shows "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [reached its original decision];

or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café*, 176 F.3d at 677. "To support reargument, a moving party must show that dispositive factual matters or controlling decisions of law were overlooked by the court in reaching its prior decision." *Assisted Living Associates of Moorestown, L.L.C., v. Moorestown Tp*, 996 F.Supp. 409, 442 (D.N.J. 1998). Mere disagreement with a court's decision is not an appropriate basis upon which to bring a motion for reconsideration as such disagreement should "be raised through the appellate process." *U.S. v. Compaction Sys. Corp.*, 88 F. Supp. 2d 339, 345 (D.N.J. 1999).

Further, the decisions of magistrate judges with respect to non-dispositive motions receive wide discretion. *Miller v. Beneficial Mgmt Corp.*, 844 F.Supp. 990, 977 (D.N.J. 1993) (citing *Nat'l Labor Relations Bd. v. Frazier*, 966 F.2d 812, 817 (3d Cir. 1992)). United States magistrate judges may hear and determine non-dispositive pretrial matters pending before the court pursuant to 28 U.S.C. § 636(b)(1)(A). Accordingly, it is well-settled that "the district court may modify the magistrate's order only if the district court finds that the magistrate's ruling was clearly erroneous or contrary to law." *Harrington v. Bergen Cty.*, Civ. No. 14-5764, 2017 WL 4387373, at *1 (D.N.J. Oct. 3, 2017); *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1120 (3d Cir. 1986); *see* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). For a district court to determine that a factual finding is clearly erroneous, it must have a "definite and firm conviction that a mistake has been committed." *Haines v. Liggett Group, Inc.*, 975 F.2d 81, 92 (3d Cir. 1992). The magistrate judge's decision is contrary to law where "it misinterpreted or misapplied the applicable law." *Marks v. Struble*, 347 F.Supp.2d 136, 149 (D.N.J. 2004). Importantly, the appealing party bears the burden of demonstrating that the magistrate judge's decision was contrary to law or clearly erroneous. *Cardona v. Gen. Motors Corp.*, 942 F.Supp. 968, 971 (D.N.J. 1996); *Exxon Corp. v. Halcon Shipping Co., Ltd.*, 156 F.R.D. 589, 591 (D.N.J. 1994).

Where the "appeal seeks review of a matter within the exclusive purview of the Magistrate Judge, such as a discovery dispute," however, "an even more deferential standard, the 'abuse of discretion standard' must be applied." *Worthy v. City of Newark*, 2008 WL 413309, at *2 (D.N.J. Feb. 13, 2008) (citation omitted); *see also Cooper Hosp./Univ. Med. Ctr. v. Sullivan*, 183 F.R.D. 119, 127 (D.N.J.1998). The deferential abuse of discretion standard is "particularly appropriate"— as in the case at bar—"where the magistrate judge managed the case from the outset, and thus has a thorough knowledge of the proceedings." *Phillips v. Greben*, 2006 WL 3069475, at *4 (D.N.J. Oct. 27, 2006). An abuse of discretion occurs "when the judicial action is arbitrary, fanciful or unreasonable, which is another way of saying that discretion is abused only where no reasonable man would take the view adopted." *Leap Sys., Inc. v. Moneytrax, Inc.*, Civ. No. 05–1521, 2010 WL 2232715, at *3 (D.N.J. June 1, 2010) (internal quotations and citations omitted).

C.  Discussion

Judge Wettre did not err in refusing to grant all of Plaintiffs' Discovery Demands. Throughout discovery, the Judge held conferences, read the parties' (often lengthy) submissions, considered counsels' arguments, and fairly defined the scope of discovery. As explained further

below, Plaintiffs provide no grounds on which to invade the "exclusive purview of the Magistrate Judge" and disturb her orders.[9]  *Worthy*, 2008 WL 413309, at *2 (citation omitted).

Discovery is not limitless.  *See Goodman v. Burlington Coat Factory Warehouse Corp.*, 292 F.R.D. 230, 233 (D.N.J. 2013) (in discovery, "[t]he Court's role is to try and find the right balance").  Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Fed. R. Civ. P. 26(b)(1); *Harrington*, 2017 WL 4387373, at *1–2.  Here, to the extent that the Discovery Order limited Plaintiffs' access to discovery, it did not misinterpret or misapply the applicable law—nor did it cause manifest injustice.  When Plaintiffs raised their initial Discovery Demands, Judge Wettre considered the scope of discovery up to that point, which included, among other things: (1) the Spreadsheet, supplemented with additional information regarding class size; (2) verified interrogatory responses; (3) interrogatories and documents sufficient to prove net worth; (4) a Rule 30(b)(6) deposition; and (5) an agreement to provide a sample of underlying Spreadsheet data. (*See, e.g.*, D.E. 96.)  With this in mind, the Discovery Order denied some of Plaintiffs' requests.

In particular, the decision to deny Plaintiffs' request for a supplemental Rule 30(b)(6) deposition was logical, supported by the Record, and within the confines of the Federal Rules.  The Third Circuit has stated that Rule 30(b)(6)'s purpose is to "curb the 'bandying by which officers . . . of a corporation are deposed in turn but each disclaims knowledge' of relevant facts."  *Black Horse Lane Assoc., L.P.*, 228 F.3d at 304 (quoting Fed. R. Civ. P. 30(b)(6) Advisory Committee's

---

[9] This Court notes that it is challenging to interpret the grounds for Plaintiffs' Appeal.  The Discovery Order granted Plaintiffs' requests in part and denied them in part.  (D.E. 76.)  However, Plaintiffs' brief is devoid of any meaningful citations to the language of the Discovery Demands, the Discovery Order, or the Reconsideration Order.  (D.E. 95; D.E. 103.)  Additionally, only two of Plaintiffs' Discovery Demands (the net worth and supplemental deposition requests) remained in dispute at the August conference.  (*See supra*, Background at 4.)  Further, Plaintiffs' moving brief seems to only dispute the supplemental deposition determination, as it does not discuss net worth at all.  (*See* D.E. 95-1; D.E. 103; D.E. 100 at 8.)  In many places, the scope of Plaintiffs' arguments seems to extend beyond the disputes decided by Judge Wettre prior to the Appeal.  (*See, e.g.*, D.E. 103 ("[T]he Court should reverse the previous Orders . . . *as well as* the more recent discovery order of November 20 . . . .") (emphasis added).)  Finally, certain hyperbolic statements in Plaintiffs' brief (for example, the claim that Defendants have refused to allow them discovery into "any matter") only muddy the waters further.  (D.E. 95 at 1.)

As a result, Defendants' argument that the Appeal is moot, due to the fact Judge Wettre has since granted a two-hour supplemental deposition, are well-taken.  (*See* D.E. 100.)  The doctrine of mootness arises out of Article III of the United States Constitution, which limits the federal "judicial power" to the adjudication of "cases" or "controversies." *See, e.g., Am. Bird Conservancy v. Kempthorne*, 559 F.3d 184, 188 (3d Cir. 2009).  "If one or more of the issues involved in an action become moot pending appeal or pending the decision of an appellate court, the adjudication of the moot issue or issues should be refused."  *N.J. Tpk. Auth. v. Jersey Cent. Power & Light*, 772 F.2d 25, 30 (3d Cir. 1985).  The Reconsideration Order, however, denied Plaintiffs' Motion—even though it separately requested supplemental briefing regarding the deposition request.  (*See* D.E. 99.)  Thus, this Court has analyzed the Reconsideration Order independently, to determine its appropriateness pursuant to the Federal Rules.  This is particularly appropriate given the vagueness of Plaintiffs' Appeal, and the lack of clarity as to which Discovery Demands it aims to challenge.

Notes); *see also Private Sols. Inc. v. SCMC, LLC*, 2016 WL 8732078, at *4 (D.N.J. May 20, 2016) (these depositions "more efficiently produce the most appropriate party for questioning, curb[] . . . elusive behavior of corporate agents [who may] suggest someone else has the requested knowledge and reduce[] the number of depositions for which an organization's counsel must prepare . . . .") (quoting *Harris v. New Jersey*, 259 F.R.D. 89, 92 (D.N.J. 2007)).  Thus, if an additional Rule 30(b)(6) deposition is granted, it must align with these purposes.  *See Munich Reinsurance Am., Inc. v. Am. Nat. Ins. Co.*, Civ. No. 09-6435, 2011 WL 1466369, at *13 (D.N.J. Apr. 18, 2011) (collecting cases where Rule 30(b)(6) depositions were denied, because they would duplicate verified information, were burdensome, or were cumulative of prior discovery).

Here, the Record demonstrates that Judge Wettre was well-acquainted with the case and briefing.  (*See, e.g.*, D.E. 54 at 4:6-20.)  Nonetheless, she determined that Plaintiffs had failed to articulate with specificity their need for a supplemental deposition.  (*See* D.E. 96 at 7:5-10.)  This Court similarly struggles to decipher Plaintiffs' earlier requests, which at times seemed to explicitly state that the supplemental deposition would be duplicative of the Spreadsheet, as Plaintiffs hoped to merely "confirm" the document's accuracy through testimony.  (*See id.* at 4:25-5:4.)  Various other arguments from Plaintiffs were considered and rejected.  (*See, e.g.*, *id.* at 9:18-10:22 (discussing the preparedness of the prior corporate witness).)  Similarly, although Plaintiffs argued that Defendants' corporate representative gave "false" testimony, the Record suggests that Defendants made an honest calculation error, and prepared their original witness based on that incorrect information.  (*Id.* at 3:16-22.)  The Discovery Order also accounted for the fact that privilege claims would likely bar testimony from being obtained as to some of Plaintiffs' proposed topics.  (*Id.* at 8:7-9.)  For all of these reasons, the Discovery Order was proper.

The proper legal standards were also applied in the Reconsideration Order.  (*See id.*)  In denying Plaintiffs' Motion, Judge Wettre noted that a party moving for reconsideration must demonstrate: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court made its initial decision; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice."  (*Id.* at 5:18-24.)  Plaintiffs did not identify any such new grounds for reconsideration, and the Reconsideration Order concluded that Plaintiffs had merely restated arguments that were previously considered in the Discovery Order.  (*Id.* at 6:6-9.)  Thus, Plaintiffs failed to meet their heavy burden to demonstrate that reconsideration was warranted.  (*Id.*; *see also Oritani Sav. & Loan Ass'n v. Fid. & Deposit Co. of Md.*, 744 F. Supp. 1311, 1314 (D.N.J. 1990) (asking a court to rethink its decision is an inappropriate basis for reconsideration).)

Finally, in their Appeal, Plaintiffs do not suggest any "clear error of law" in the Discovery or Reconsideration Orders.  (*See* D.E. 95-1 at 7, 8.)  Instead, Plaintiffs base their Appeal on a vague need to "prevent manifest injustice."[10]  (*See* D.E. 95 at 7 (arguing that the Court's decision barred

---

[10] Plaintiffs repeatedly gesture to issues they are having with proving the elements of their putative class.  (D.E. 95-1 at 7 ("[T]he Reconsideration Order . . . had the unjust effect of requiring Plaintiffs to satisfy the elements of Rule 23 without the discovery that is a necessary prerequisite to do so.").); *id.* at 8 ("The Court .. should have allowed Plaintiffs to obtain discovery, including by way of a supplemental Rule 30(b)(6) deposition, to the extent it would enable Plaintiffs to satisfy Rule 23 and explore Defendants' new contentions raised following the disclosure of withheld information."); *id.* at 9 ("[N]ot permitting additional deposition testimony[] . . . severely prejudice[es] Plaintiffs'

it from accessing "class size information by which to satisfy numerosity").)  Plaintiffs seem to suggest that the "manifest injustice" which has resulted is the fact that Plaintiffs lack "correct information as to the class size."  (D.E. 95-1 at 6.)  However, Plaintiffs do not cite any previous deposition testimony or describe any documents that might suggest previous discovery was insufficient.  (*See id.*)  Further, although Plaintiffs filed an Appeal brief on November 9, which stated that their request for a supplemental deposition had been denied (D.E. 95-1 at 8), in reality, Plaintiffs had filed a supplemental letter regarding the request five days prior (D.E. 96 at 10:23-13:20), and a decision on the topic was pending.  (*See* D.E. 99.)  In the weeks since, the request has been granted, albeit in a narrower ruling than Plaintiffs would prefer.[11]  (*Id.*)  Thus, the speculative benefit of a slightly longer Rule 30(b)(6) deposition does not seem to outweigh the burden to the parties and to the court's resources.

Plaintiffs' Appeal, which directly cites only one case, also fails to provide legal authority that suggests the Discovery Order caused manifest injustice.  (*See* D.E. 95; 103.)  In that singular case, *Max's Seafood Cafe*, the court "failed to" even "address" whether holding one party in contempt "resulted in a clear error of law or fact or resulted in a manifest injustice."  176 F.3d 669, 678 (3d Cir. 1999).  Here, Judge Wettre quoted *Max's Seafood*'s discussion of "manifest injustice" on the Record.  (*See* D.E. 96 at 5:13-24.)  Then, she noted that, although the change "in the size of the putative class" was "late-breaking" and may have caused "certain problems for plaintiffs," those problems were outweighed by "the age of this case; the extraordinarily long period of time the parties have been in fact discovery . . . ; plaintiffs' vaguely stated need for the deposition; prejudice and delay that may result from allowing the deposition; and the need to move a straightforward FDCPA case into the next phase of proceedings."  (*Id.* at 6:11-23.)  To warrant reconsideration, a party must present more than "mere disagreement" with the court's decision and a "recapitulation of the [original] cases and arguments."  *G–69 v. Degnan*, 748 F. Supp. 274, 275 (D.N.J. 1990) (internal citation omitted).  Plaintiffs fail to meet this bar.[12]  *See Tehan v. Disability Mgmt. Servs.*, 11 F. Supp. 2d 542, 549 (D.N.J. 2000).

---

ability to satisfy the elements of Rule 23").  This Court, however, struggles to see how an increase in class size impeded or altered Plaintiffs' ability to prove the other Rule 23 elements.  The Record also suggests that, because Defendants provided verified Spreadsheet information about the larger class size, Plaintiffs have the very "numerosity" information that they claim to lack.  Judge Wettre noted the same, stating that even if Plaintiffs had only the Spreadsheet and documents, "in light of the authentication affidavits defendants just provided," it is unclear why additional testimony "to verify the new data in the [Spreadsheet]" would be necessary.  (D.E. 96 at 8:1-5.)

[11] As noted previously, Rule 26 imposes relevancy and proportionality limits regarding the scope of discovery.  Plaintiffs have already enjoyed excessive time in which to engage in discovery and full access to a corporate representative to the extent allowed by the Federal Rules.  Even assuming that Plaintiffs' additional proposed deposition topics were relevant (*see* D.E. 79), they nonetheless seem to fail Rule 26's proportionality requirement.  The benefit of granting Plaintiffs' additional Discovery Demands was likely minimal, given the amount of time that has transpired in discovery, and the fact that although the numbers of the putative class seem to have expanded in size, the issues surrounding Plaintiffs' claims have not.

[12] Plaintiffs also argue that they are entitled to depose Defendants regarding documents that have been produced since the Reconsideration Order.  (*See* D.E. 103 at 4 (discussing the 30 files of data sampling ordered by Judge Wettre, the class size updates, and the letter templates that Defendants produced to Plaintiffs).)  Judge Wettre specifically

Despite multiple conferences with the parties and myriad attempts to guide counsel, discovery in this case has devolved into contentious and protracted motion practice.  Moreover, the Record demonstrates a concerning theme: disputes seem to be resolved, with Plaintiffs stating their satisfaction with certain compromises, until one party suddenly reneges on the agreed-upon plan.  (*See supra*, Background.)  From this discovery morass, the Discovery Order drew a proper line between speculative and burdensome discovery, which is barred by Rule 26, and ensured Plaintiffs had sufficient access to evidence with which to argue their putative class.[13]  Therefore, after careful consideration of the Discovery and Reconsideration Orders, as well as parties' briefing on appeal, this Court concludes that Judge Wettre did not abuse her discretion in denying Plaintiffs' Motion.  Her decisions were not arbitrary, fanciful, or unreasonable.  In fact, the relevancy and proportionality requirements in Rule 26 precluded the burdensome and speculative inquiry proposed by Plaintiffs.  Accordingly, her decision will be affirmed.

## **CONCLUSION**

For the reasons set forth above, the Discovery and Reconsideration Orders are **AFFIRMED.**  An appropriate order follows.

_____/s/ Susan D. Wigenton_____
**SUSAN D. WIGENTON, U.S.D.J.**

Orig:   Clerk
cc:     Parties
        Leda D. Wettre, U.S.M.J.

---

considered most of these arguments and rejected them.  (*See* D.E. 96.)  There was no manifest injustice in her decision to do so—particularly given her recent decision to grant a two-hour supplemental deposition.  (D.E. 99.)

[13] In fact, recent docket activity shows that this Court continues to wade through "far-flung discovery" requests raised by Plaintiffs.  (D.E. 105 (letter order responding to additional discovery disputes).)